UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>JOSHUA JOHN HESTER (1)<br>MARCO MANUEL LUIS (5)<br><br>　　　　　　　　Defendants. | Case No.:  10cr2967 BTM<br><br>**ORDER ON ORDER TO SHOW CAUSE** |

### I. BACKGROUND

On August 27, 2012, Judge Gonzalez sentenced Defendant Marco Manuel Luis to 48 months in custody and also ordered restitution in the amount of $545,024.90, an amount set forth in Luis's sentencing memorandum. Luis's Judgment [Doc. 677] indicates that the defendant shall pay restitution in the amount of $545,024.90 to the United States immediately. The Judgment provides: "If this judgment imposes a fine or restitution obligation, it is a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in this judgment."

On September 5, 2012, Luis requested that the restitution order be vacated and reconsidered. Judge Gonzalez granted this request and held an evidentiary hearing.

In an Order Granting Restitution [Doc. 773] as against Luis, Judge Gonzalez found that CitiGroup's loss on both of the Palomar Mountain loans combined was $329,767. With respect to the Rancho Santa Fe loans, Judge Gonzalez found that the loss to JP Morgan Chase ("Chase") on both loans was $615,935. Judge Gonzalez ordered Luis to pay jointly and severally with co-defendants restitution in the amount of $329,767 to CitiGroup and $615,935 to Chase.

In a separate Order Granting Restitution [Doc. 891] dated July 16, 2013, Judge Gonzalez incorporated by reference the prior Order Granting Restitution and ordered defendant Joshua John Hester to pay jointly and severally, with the codefendants, restitution in the amount of $329,767 to CitiGroup and $615,935 to Chase. Hester's Judgment [Doc. 804] filed on January 28, 2013, does not provide for the payment of restitution.

Luis and Hester appealed the restitution orders. The Ninth Circuit affirmed the calculation of restitution owed to CitiGroup on the Palomar Mountain loans but vacated and remanded for recalculation of the restitution owed to Chase.

Upon remand, the case was assigned the undersigned judge. The parties briefed the issue of what restitution, if any, was owed to Chase, and the Court held an evidentiary hearing on July 29, September 16-17, and December 16, 2015.

On October 5, 2015, the United States filed a motion for the Court to enter an order authorizing the Bureau of Prisons to turnover funds in excess of $12,000 held in the inmate trust account of Hester to be applied to restitution in his case. Hester opposed the government's request [Doc. 1020], arguing that the Court lacks jurisdiction to amend the CitiGroup restitution judgment and that because Judge Gonzalez made no findings regarding Hester's financial resources, there is

no enforceable restitution obligation to trigger 18 U.S.C. § 3664(n).[1]

The Court set a hearing on the government's motion to authorize the BOP to turnover funds held in Hester's inmate trust account and issued an order [Doc 1010] setting forth issues that counsel should be prepared to discuss, including: (1) whether Judge Gonzalez either determined that Hester's financial resources are sufficient such that periodic payments are unwarranted, or set a schedule in consideration of Hester's financial resources as required by the Mandatory Victims Restitution Act ("MVRA"); (2) whether Hester is under a current obligation to pay restitution such that the provisions of section 3664(n) can be triggered; (3) if a payment schedule should be set, what the payment schedule should be, and (4) if it is proper to order that funds from Hester's inmate trust account be turned over for purposes of restitution, what amount, if any, should be left in the account for Hester's personal use.

On December 14, 2015, the United States withdrew its motion authorizing the turnover of funds from Hester's inmate trust account [Doc. 1015]. The government conceded that Judge Gonzalez made no findings about Hester's financial condition or ability to pay before ordering restitution and requested that the Court make necessary findings upon issuing the new restitution order on remand. The government also moved the Court for an order pursuant to the All Writs Act, 28 U.S.C. § 1651, freezing Hester's inmate trust account pending the Court's issuance of a new restitution order.

In an order filed on December 21, 2015 [Doc. 1018], the Court temporarily froze Hester's inmate trust account with the exception of $1,000 for Hester's necessary expenses.

In an order filed on December 30, 2015 [Doc. 1019], the Court held that the

---

[1] Section 3664(n) provides: "If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed."

government has not established by a preponderance of the evidence that Chase suffered any loss on the Rancho Santa Fe loans.  Therefore the Court found that no restitution is owed to Chase.

In an Order to Show Cause filed on February 17, 2016 [Doc. 1039], the Court ordered counsel to be prepared to discuss:  (1) why Hester's inmate trust account should not be applied to restitution; (2) whether the Court should set a restitution payment schedule; and (3) whether a payment plan should be included as a condition of supervised release.  The parties submitted briefing on the issue [Docs. 1040-1044], and the Court held a hearing on March 7, 2016.

## II.  DISCUSSION

A.  Application of Funds in Inmate Trust Account to Restitution

The government seeks an order authorizing the BOP to turnover funds in Hester's inmate trust account to be applied to the $329,767 in restitution owed to CitiGroup.  The Court finds that such an order is appropriate under the relevant statutes.

Under 18 U.S.C. § 3613(c), an order of restitution is a lien in favor of the United States on all property and rights to property of the defendant.  An order of restitution may be enforced by the United States in the same manner that it recovers fines or "by all other available and reasonable means."  18 U.S.C. § 3664(m)(1)(A)(i).  Furthermore, the MVRA provides:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source . . . during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

18 U.S.C. § 3664(n).  Under these statutes, courts have found it appropriate to order the turnover of funds in inmate trust accounts to be applied to restitution. See, e.g., United States v. Pearlman, No. 6:07-cr-0097, Dkt. 78 (M.D. Fla Feb 24,

2015); United States v. Haymore, No. 09-40072-001, Dkt. 116 (C.D. Ill. June 15, 2015).

Hester contends that a turnover order is not proper because the underlying order of restitution is unlawful. Relying on Ward v. Chavez, 678 F.3d 1042, 1050 (9th Cir. 2012), Hester argues that the restitution order is not lawful because Judge Gonzalez simply ordered immediate repayment without considering his financial circumstances and whether periodic payments are warranted. If the restitution order is not lawful, payment of the restitution arguably may not be accelerated under 18 U.S.C. § 3664(n). See United States v. Bratten-Bey, 564 Fed. Appx. 28, 29-30 (4th Cir. 2014) (explaining that for § 3644(n) to be triggered, the defendant must be under a current obligation to satisfy the judgment).

Although Hester is correct that Judge Gonzalez failed to consider his financial circumstances before ordering immediate payment, Hester has waived his argument that the restitution order is unlawful by failing to raise it on appeal. A party who could have sought review of an issue during a prior appeal but failed to do so is deemed to have waived his right to raise this issue before the district court on remand or before the court of appeals on a subsequent appeal. United States v. Adesida, 129 F.3d 846, 849-50 (6th Cir. 1998). "It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1981). See also Skretvedt v. E.I. Dupont de Nemours, 372 F.3d 193, 202-04 (3d Cir. 2004) (refusing to consider issues that a party attempted to litigate on remand even though the party failed to raise the issues in the party's prior appeal and the issues were not explicitly or implicitly remanded for further proceedings).

Although Hester and Luis appealed the restitution orders, they did not argue that the orders were unlawful under Ward. Thus, they have waived such argument.

Therefore, Hester is under a current obligation to pay restitution, and

§ 3664(n) applies. The government has filed a statement of Hester's inmate trust account [Doc. 1043-1], which shows that Hester has received "substantial resources" from an unknown source. Since August of 2010, there have been regular transfers of funds from Western Union or money grams into Hester's account. These deposits are usually between $100-$300 and are sometimes made several times during a month. As of February 22, 2016, the ending balance of Hester's account was $12,639.30.

The Court finds that a turnover order is warranted and will order the Bureau of Prisons to turnover all funds, minus $500, in Hester's inmate trust account. The remaining $500 is for Hester's necessary personal expenses.

B. <u>Restitution Payment Schedule</u>

Under the MVRA, upon receipt of notification of a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution," the court may "adjust the payment schedule, or require immediate payment in full, as the interest of justice require." 18 U.S.C. § 3664(k).

The Court believes that § 3664(k) is applicable in Hester's case. Although deposits have been made into Hester's account since August of 2010, it was not until February of 2013, that the monthly amount of the deposits started becoming substantial (over $500). Hester's restitution order was filed in July of 2013. Since that time, substantial amounts have continued to be deposited into Hester's account on a monthly basis, and, over the past year, the deposits have become more frequent and the monthly amount has increased. In 2015, more than $14,500 was transferred into Hester's account from Western Union or money grams, and the average monthly deposit was approximately $1,220.

In the Court's view, there has been a material change in Hester's economic circumstances that affect his ability to pay restitution. Therefore, the Court will set a payment schedule. For 2014-2015, the average monthly deposit in Hester's

account was approximately $940. Based on this information, the Court sets a payment schedule of $500 per month.

C. <u>Inclusion of Payment Schedule as a Condition of Supervised Release</u>

As to both Hester and Luis, the Court includes a restitution payment schedule as a condition of supervised release.

Relying on <u>United States v. Hatten</u>, 167 F.3d 884 (5th Cir. 1999), Defendants argue that the Court lacks jurisdiction to modify the conditions of supervised release on the grounds of illegality. However, <u>Hatten</u> is distinguishable because in <u>Hatten</u>, the judgment had been final for three years.

Here, the judgment is not final because Defendants appealed the restitution orders, which were vacated in part and remanded for further proceedings. Having ruled on the remanded issues, the Court will amend the judgments to conform to the Court's rulings regarding restitution. As part of the amended judgments, the Court will set forth a payment schedule, which will be a condition of supervised release.

As discussed above, the Court finds that for Hester, a payment schedule of $500 per month is appropriate. Based on what the Court knows about Luis's financial circumstances, the Court sets a payment schedule of $100 per month for Luis.

## III. **CONCLUSION**

For the reasons discussed above, the Court authorizes the Bureau of Prisons to turnover to the Clerk of Court all of the funds, with the exception of $500, held in the Inmate Trust Account of Joshua John Hester. The Clerk shall apply these funds as payment toward the restitution owed by Defendant in this case.

The Court will also amend the judgment of Joshua John Hester to (1) reflect that Hester owes, jointly and severally with co-defendants, restitution in the amount

1  of $329,767 to CitiGroup; (2) set a restitution payment schedule of $500 per month;
2  and (3) include the payment schedule as a condition of supervised release.
3      The Court will amend the judgment of Marco Manuel Luis to (1) reflect that
4  Luis owes, jointly and severally with co-defendants, restitution in the amount of
5  $329,767 to CitiGroup; (2) set a restitution payment schedule of $100 per month;
6  and (3) include the payment schedule as a condition of supervised release.
7  **IT IS SO ORDERED.**
8  Dated:  March 14, 2016

                          Barry Ted Moskowitz, Chief Judge
                          United States District Court

8

10cr2967 BTM